UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORI LEE HUBER,<br><br>              Petitioner,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security Administration,[1]<br><br>              Respondent. | Case No. 3:15-cv-00503-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Lori Huber's Petition for Review of the Respondent's denial of social security benefits, filed on October 27, 2015. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Fed. Rule Civ. P. 25(d), Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Respondent in this matter. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on March 16, 2012. This application was denied initially and on reconsideration, and a hearing was held on January 9, 2014, before Administrative Law Judge (ALJ) James Sherry. After hearing testimony from Petitioner, her spouse, and a vocational expert, ALJ Sherry issued a decision on March 7, 2014, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on August 28, 2015.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the January 9, 2014 hearing, Petitioner was thirty-six years of age. She has a high school education, and completed a two-year office technology certificate course. Her prior work experience includes work as a janitor, pulling green chain, a dietary aide, and a shipping and receiving clerk.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of March 1, 2009.

**MEMORANDUM DECISION AND ORDER - 2**

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's degenerative disc disease of the lumbar spine, status post discectomy with discogenic pain, radiculopathy, and lumbago; degenerative disc disease of the cervical spine/cervicalgia; headaches and greater occipital neuropathy; history of irritable bowel syndrome and GRD; and depression severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listing 1.00 for her musculoskeletal impairments; Listing 11.14 for peripheral neuropathies; and Listing 14.09 for inflammatory arthritis, as well as Listing 12.04 for affective disorder.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's functional capacity, the ALJ determines whether Petitioner's complaints about the intensity, persistence and limiting effects of her pain are credible. Here, the ALJ found Petitioner's complaints about the intensity and persistence of her pain not entirely credible. The ALJ reconciled the opinions of state agency physicians with Petitioner's treating physician, Craig Flinders, M.D., as well as Jackie Gingerich, M.S. The ALJ gave the state agency physicians' opinions more weight than Petitioner's treating physician and other care providers, based upon treatment history or inconsistencies with the record as a whole.

**MEMORANDUM DECISION AND ORDER - 3**

After so doing, the ALJ determined Petitioner retained the ability to perform light work, with limitations on lifting, carrying, pushing and pulling of 20 pounds occasionally and 10 pounds frequently, and a sit/stand option every two hours. Further limitations included only occasional bending, stooping, crouching, kneeling, crawling, balancing, and ramp/stair climbing, and to performing simple, routine, repetitive tasks with simple work related decisions, and no fast-pace production requirements. (AR 14.)

The ALJ found Petitioner retained the ability to perform her past relevant work as a commercial cleaner as she actually had performed that work. Alternatively, the ALJ proceeded to step five. The burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ found Petitioner retained the ability to perform the requirements of representative occupations such as production inspector/checker and hand packager/inspector packer. Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental

**MEMORANDUM DECISION AND ORDER - 4**

impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its]

**MEMORANDUM DECISION AND ORDER - 5**

judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

**1.      Physician Opinions**

Petitioner contends the ALJ erred by giving little weight to Dr. Flinders' opinion, and failed to properly support his conclusion that the evidence of record does not support the opinion. Petitioner argues the evidence does support Dr. Flinders' opinion, because the medical records demonstrate continued treatment for low back and neck pain.

The Ninth Circuit Court of Appeals distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion

of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Also, "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a claimant's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the treating physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An ALJ also may reject a treating physician's opinion if it is based "to a large

**MEMORANDUM DECISION AND ORDER - 7**

extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Dr. Flinders completed a check-the-box questionnaire on January 8, 2014. (AR 702.) He indicated he had been treating Petitioner since November of 2010, prior to her discectomy at L5-S1, which Dr. Flinders had performed on November 16, 2010. (AR 274.) In Dr. Flinders' opinion, Petitioner suffered from marked impairments due to her cervical radiculopathy, occipital neuropathy, and lumbar radiculopathy. (AR 702.) He indicated his opinions are supported by Petitioner's MRI results and physical exam findings. Dr. Flinders opined Petitioner was limited to standing and sitting less than two hours each day, and that she would miss more than four days each month due to her impairments.

Although Dr. Flinders Dr. Flinders had not begun treating Petitioner until November of 2010, he was asked to provide an opinion regarding the severity of her impairments as of March of 2009, the date Petitioner claimed her disability began. Dr. Flinders indicated Petitioner's impairments were less severe as of March of 2009, and they had worsened after an accident approximately a year and a half earlier in 2012, when Petitioner fell and injured her neck. The ALJ gave Dr. Flinders' assessment little weight based upon the overall evidence of record and the statements in Dr. Flinders' treatment note from December of 2013, just one month prior to the date he completed the questionnaire.

Here, contrary to Petitioner's assertion, Dr. Flinders' opinions were contradicted by the opinions of the state agency physicians, who were of the opinion Petitioner

MEMORANDUM DECISION AND ORDER - 8

retained a physical RFC for light work. (AR 17.) Accordingly, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Flinders' opinion, which he did. The ALJ cited Dr. Flinders' December 12, 2013 treatment note, which indicated Petitioner at that time reported a baseline pain level of 2-3, continued treatment by conservative means, as well as a recommendation to begin range of motion exercises. (AR 690-92.) Despite these findings, Dr. Flinders' December 2013 treatment note indicated Petitioner was suffering "disabling pain." (AR 690.) The ALJ noted the treatment note, just one month prior to Dr. Flinders' completion of the questionnaire, contradicted his opinions in the questionnaire, which indicated an incapacitating level of pain contrary to what Petitioner had self-reported just one month prior.

Second, the ALJ discussed Petitioner's treatment history at length and in great detail. Specifically, the ALJ noted MRI imaging in June of 2010 and February of 2011 demonstrated only mild degenerative disc disease at L5-S1 with only a slight bulge and no nerve root displacement. Petitioner underwent continued conservative treatment in 2010 via a block injection and pain management with medication. A normal CT scan in June of 2011 indicated normal L4-5 disc, and minimal arthropathy in the L5-S1 area. Physical therapy records during June, July, and August of 2011 showed improvement, advancement in exercises, and reports of decreased pain.

Chiropractic treatment notes in April and June of 2012 reflected Petitioner reported a pain level of 1 on the typical 10-point pain scale. Orthopedic examinations throughout 2012 indicated normal examinations for gait, motor skills, reflexes, and

**MEMORANDUM DECISION AND ORDER - 9**

muscle tone. A repeat MRI in April of 2012 demonstrated only a shallow disc bulge at L5-S1, with a possible annular tear in the right preforaminal abutting the ventral aspect of the proximal right descending S1 nerve root sleeve. Petitioner was encouraged to stay active and stretch, and she had no other positive exam findings.

After a fall in July of 2012 with resultant neck pain, Petitioner underwent a cervical MRI in August 2013, which demonstrated multilevel degenerative disc disease of the cervical spine and at L5-S1; however, surgery was not recommended and she began another physical therapy program. Later findings in October of 2013 indicated an unremarkable examination.

The foregoing discussion preceded the ALJ's conclusion that the record as a whole did not support Dr. Flinders' opinion on the ultimate issue of disability. (AR 16.) The Court has independently reviewed the record, and finds that the ALJ's conclusion is well supported by substantial evidence in the record. The Court will not second guess the ALJ's conclusion, and finds no error.

2.      **Twelve Month Durational Requirement**

Petitioner argues the ALJ erred in applying the 12-month durational requirement with regard to Petitioner's neck injury. The ALJ noted that Petitioner asserted her neck injury caused by a fall in July of 2012 exacerbated her pain, and consequently, "the severity of her currently asserted complaints do not meet the minimal durational requirement of 12 continuous months." (AR 19.) The ALJ further stated that Petitioner's physical therapy records from June, July, and August of 2011, after her discectomy at L5-S1 in November of 2010, indicated significant improvement and reports of a low pain

level, with repeated examinations found to be clinically unremarkable. (AR 19.) Accordingly, the ALJ concluded Petitioner's allegations of chronic pain and limitations prior to March of 2013, her date last insured, were not supported by her treatment records as a whole. (AR 19.)

Petitioner's date last insured was March 31, 2013. (AR 10, 178.) Petitioner must establish she was subject to a condition which became so severe as to disable her prior to the date upon which her disability insured status expired. *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). Impairments must meet a durational requirement of at least twelve continuous months. 20 C.F.R. § 404.1509. At step two, the ALJ must find that the impairment meets the duration requirement and is considered severe. 20 C.F.R. § 404.1520(a)(4)(ii). Petitioner argues the ALJ's reasoning is faulty, because in finding Petitioner's cervical injuries severe, he necessarily found those impairments met the durational requirement.

Petitioner appears to take the ALJ's statement out of context. Within the portion of the written opinion referenced by Petitioner, the ALJ discusses Petitioner's credibility. The ALJ explained that, prior to Petitioner's MRI in August 2013, and her July 2012 fall and neck injury, physical therapy records throughout the summer of 2011 showed significant improvement and a low pain level, with minimal reports of any headaches and unremarkable findings upon examination. Chiropractic treatment notes during 2012 also indicated minimal pain levels. Accordingly, the ALJ concluded Petitioner's reports of disabling pain symptoms since her alleged onset date of March 2009 were not supported

by her treatment records, and thus Petitioner's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (AR 19.)

Because the hearing occurred on January 9, 2014, less than one year after Petitioner's post-trauma complaints which surfaced in or about March of 2013, the ALJ's statement about the durational requirement was, at that time, accurate. Further, the ALJ at no time questioned his step-two determination that Petitioner's impairments were severe. Rather, the ALJ noted that, prior to Petitioner's fall and resulting neck injury in July of 2012, her symptoms as reflected in the medical evidence of record did not support her assertions of disabling and limiting pain during that time frame.

Here, the ALJ declined to rely upon testimony pertaining to current pain levels, or more recent pain, which Petitioner complained of after the injury to her neck in July of 2012. The record supports the ALJ's conclusion. Even Dr. Flinders indicated in his January 8, 2014 questionnaire that Petitioner's limitations were not as severe as of March of 2009, and only reached that level of severity after Petitioner's accident approximately one and one-half years prior to his completion of the questionnaire. (AR 706.)[2] The ALJ therefore properly rejected Petitioner's testimony regarding her current pain level in examining her symptoms from her onset date of March 1, 2009, up through the date of the hearing on January 9, 2014, and correctly noted that Petitioner's worsening pain complaints did not exist prior to the fall injuring her neck in July of 2012.

The Court therefore finds no error.

---

[2] Dr. Flinders noted Petitioner developed pain, spasm, and headaches after she fell from a hay bale in July of 2012. (AR 690.)

**MEMORANDUM DECISION AND ORDER - 12**

3.  **Credibility**

Petitioner argues the ALJ erred for several reasons. First, she argues the ALJ misrepresented her testimony about using the stairs in her home. Second, she contends the ALJ improperly demanded objective evidence of Petitioner's pain. Third, Petitioner asserts the chiropractic treatment she received did not improve her condition, contrary to the ALJ's findings. And finally, Petitioner argues the ALJ mischaracterized Petitioner's complaints of headaches and selectively relied on excerpts from the record.

To find Petitioner's testimony regarding the severity of her pain symptoms unreliable, the ALJ was required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of pain. *Id.* (quoting *Smolen*, 80 F.3d at 1281–82). If the claimant meets this threshold and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*

The ALJ may consider many factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the

**MEMORANDUM DECISION AND ORDER - 13**

claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id*. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Id.* (quoting *Thomas*, 278 F.3d at 959).

Here, as discussed above, the ALJ cited clear and convincing reasons properly rejecting Petitioner's testimony pertaining to current pain levels, and properly reviewed the evidence from her date of onset forward. Petitioner's testimony about the severity of her pain experienced after her fall and resulting neck injury in 2012 could not support her claim of disabling symptoms in existence from her onset date of March 1, 2009. As to Dr. Flinders' treatment note in December of 2013, where he suggested surgical fusion as a possible treatment, at no time prior to this date do the treatment records reflect that such surgery was recommended or considered. Rather, following Petitioner's discectomy in November of 2010, Petitioner was treated conservatively, with physical therapy and pain medication. The ALJ correctly pointed out that physical therapy records from June-August of 2011 show Petitioner completed advanced exercises and reported an increase in activity without a corresponding increase in pain during that time period. (AR 18.)

Petitioner finds fault with the ALJ's characterization of the chiropractic treatment records in 2012, before the fall in July of 2012. Records from Harper Chiropractic on April 9, 2012, indicated Petitioner complained of upper back pain, but that the pain felt better after chiropractic treatment. Her pain reportedly was a 6 on the 10-point scale. (AR 475.) At her next visit on April 11, 2012, Petitioner reported improvement. (AR 477.) On April 17, 2012, Petitioner again reported decreasing neck pain, with a pain level of 4.

(AR 479.) On April 24, 2012, Petitioner reported, "almost no neck pain now," and at a level 1 on the 10-point pain scale. (AR 481.) On May 8, 2012, Petitioner reported a decrease in pain after taking the prescribed supplements, but that her pain in her neck had increased after doing "some work." Her pain was, however, still at a level 1 on the 10-point pain scale. (AR 483.)

On June 4, 2012, Petitioner reported having fallen,[3] but reported her pain at a level 1, and Dr. Harper noted decreased tenderness to palpitation in the cervical area, which had decreased since the last visit. (AR 485.) Petitioner reported on June 7, 2012, that her condition had improved, and that she had "decreased neck [and] upper back pain," with a pain level of 1. (AR 487.) She again reported a pain level of 1 on June 15, 2012, and continued improvement since her last visit, although she had neck soreness when turning to the left or looking up. (AR 489.) She reported the same on June 21, 2012. (AR 491.) On June 26, 2012, Petitioner reported improvement, although her neck was "sore", but her pain level remained at grade 1. (AR 493.) On June 28, 2012, and again on July 2, 2012, July 5, 2012, July 11, 2012, Petitioner reported soreness, but a pain complaint of level 1. (AR 494 – 503.)

Petitioner focuses on other notes contained within Dr. Harper's records. However, the Court will not reverse credibility determinations made by the ALJ based upon contradictory or ambiguous evidence. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Here, the ALJ focused on Petitioner's self-reports to Dr. Harper of improvements

---

[3] There is some discrepancy as to the date of Petitioner's fall. Here, it appears she reported falling in June of 2012. However, Dr. Flinders' notes indicate the fall occurred in July of 2012. Notably, if the fall did occur in June of 2012, later chiropractic treatment records in June and July of 2012 indicate a low pain level.

**MEMORANDUM DECISION AND ORDER - 15**

with each visit, and a pain level of 1 on the typical 10-point scale as a reason to question Petitioner's credibility about the severity of her pain. (AR 18.) The Court will not second-guess the ALJ's conclusion in this regard.

In addition to the chiropractic treatment notes, the ALJ noted the relatively unremarkable clinical findings upon examination after Petitioner underwent discectomy in November of 2010. Specifically, the ALJ noted care providers reported normal ambulation, range of motion, strength, tone and sensation. (AR 18.) Additionally, the ALJ noted Petitioner's physical therapy records showed improvement. And last, the ALJ noted Petitioner's records indicated no inflammation or definite abnormalities of the cervical spine and mild inflammation of the right L5-S1 facet joint. (AR 18.)

Contrary to Petitioner's assertion that the ALJ demanded objective evidence of Petitioner's pain complaints, the ALJ cited the medical records that demonstrate medical evidence does not support the degree of functional limitation Petitioner claims. Conservative treatment (physical therapy) and relatively benign functional status examinations suggest a lower level of both pain and functional limitation, which evidence the ALJ may properly rely upon to discount Petitioner's credibility. *See Johnson v. Shalala*, 60 F.3d 1428, 1424 (9th Cir. 1995) (upholding the ALJ's findings when the medical evidence of record did not support the degree of functional limitation claimed).

The ALJ cited diminishing complaints of headaches, which Petitioner disputes, and references records where she complained of daily headaches. (AR 18; Pet. Brief at 14.) The Court has reviewed the records Petitioner cited. Dr. Dietrich performed a consultative examination on or about December 18, 2012. On that date, Petitioner's

**MEMORANDUM DECISION AND ORDER - 16**

complaints concerned her low back pain, although "frequent headaches" were noted. (AR 511.) On January 2, 2013, Dr. Morgenstern, a gastroenterologist, examined Petitioner for her chief complaint of epigastric pain with weight loss and nausea. "Frequent headaches" were noted, but were not the reason for the visit. (AR 515, 517.)

Physical therapy notes from May 15, 2013, contain a report of "daily headaches" while on vacation, together with increased back pain. (AR 635.) Treatment that date consisted of strengthening exercises, electrical stimulation, and mechanical traction. On May 15, 2013, Petitioner's complaints were "daily headaches." (AR 654.) Petitioner on June 21, 2013, reported a headache the day prior. (AR 637.) On August 6, 2013, Petitioner saw Dr. Campbell for complaints of neck pain and low back pain, and reported having more headaches. (AR 650). On August 20, 2013, Petitioner again saw Dr. Dietrich, and she reported neck pain and headaches. (AR 661.)

On September 19, 2013, although Petitioner reported left-sided upper neck pain up to the occiput, which gave her headaches, she reported her lumber pain was more problematic. (AR 695.) On October 29, 2013, Petitioner saw Dr. Demakas, a neurosurgeon. Petitioner reported pain at the base of the skull on the left side, but not headaches. (AR 693 – 694.) On December 12, 2013, Petitioner saw Dr. Flinders, and again reported headaches. (AR 691.) However, on this date Petitioner complained of daily pain with regard to her low back, not her neck or headaches. (AR 689.)

Based upon the Court's review of the record as a whole, the Court finds the above evidence supports the ALJ's conclusion that Petitioner's reports of headaches did diminish, to the point that her low back pain complaints took precedence, by December

**MEMORANDUM DECISION AND ORDER - 17**

of 2013. Additionally, the ALJ cited Petitioner's medication regimen, which prescribed pain medication on an "as needed basis," as a reason for discrediting Petitioner's accounts of disabling pain. (AR 19.) Accordingly, substantial evidence of record supports the ALJ's adverse credibility finding.[4]

### 4. Lay Witness Testimony

Petitioner argues the ALJ erred in his consideration of the lay witness testimony given by Petitioner's husband and mother, contending the ALJ failed to give reasons germane to each witness for rejecting their testimony.

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

In rejecting lay testimony, "the ALJ need not cite the specific record as long as

---

[4] The Court does not address Petitioner's allegation that the ALJ mischaracterized Petitioner's statement about walking up stairs. The foregoing findings are sufficient to support the ALJ's adverse credibility findings.

'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512). However, "where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F3d 1050, 1056 (9th Cir. 2006).

The ALJ discussed the lay testimony of Petitioner's husband and mother, noting that both of them strongly endorsed the decline in Petitioner's functional capabilities and reported "rather extreme" limitations, with Petitioner incapacitated for days at a time. (AR 17.) The ALJ rejected the lay witness testimony, noting Petitioner never reported such extreme limitations to her numerous care providers, and that her medical examinations repeatedly found her functional limitations to be unremarkable. (AR 17.)

Because the ALJ provided clear and convincing reasons for rejecting Petitioner's own subjective complaints about the severity of her pain, and because the lay witnesses' testimony was similar to such complaints, it follows that the ALJ gave germane reasons for rejecting the lay witnesses' testimony. Petitioner reported improvement in her symptoms to Dr. Harper, and to her physical therapist, after her back surgery in 2010. The ALJ discussed at length Petitioner's medical history and her reports to her physicians about her pain, and the Court concluded the ALJ provided clear and convincing reasons

**MEMORANDUM DECISION AND ORDER - 19**

based upon the record as a whole for rejecting Petitioner's subjective complaints about the intensity of her pain. Because the testimony of Petitioner's husband and her mother was similar to such complaints, it follows that the ALJ gave germane reasons for rejecting their testimonies. *Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

## CONCLUSION

For the foregoing reasons, the Court will affirm the decision of the Commissioner.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, it is hereby **ORDERED** that the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

DATED: July 13, 2017

_____
Honorable Candy W. Dale
United States Magistrate Judge